John J. Hebert (#010633)
Philip R. Rudd (#014026)
Wesley D. Ray (#026351)
**POLSINELLI SHUGHART PC**
3636 North Central Avenue, Suite 1200
Phoenix, AZ 85012
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-Mail: jhebert@polsinelli.com
E-Mail: prudd@polsinelli.com
E-Mail: wray@polsinelli.com

*Attorneys for the Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT**

**THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>SEDONA DEVELOPMENT PARTNERS, LLC; and THE CLUB AT SEVEN CANYONS, LLC<br><br>Debtors. | Chapter 11 Proceedings<br><br>Case No. 2:10-bk-16711-RTBP<br>Case No. 2:10-bk-16714-RTBP<br><br>Jointly Administered Under<br>Case No. 2:10-bk-16711-RTBP<br><br>**MOTION FOR INTERIM AUTHORIZATION TO USE CASH CLAIMED AS COLLATERAL** |

Debtors Sedona Development Partners, LLC ("SDP") and The Club at Seven Canyons, LLC (the "Club") (collectively the "Debtors"), through counsel undersigned, hereby move this Court pursuant to 11 U.S.C. §§ 361 and 363, and Bankruptcy Rule 4001, for an Order authorizing, for a period of 90 days, the use of cash which may be claimed as "cash collateral" by Specialty Trust, Inc. ("Specialty"), in its capacity as lender and/or purported agent for certain investors. Although the Debtors do not believe that the cash generated by its operations and sought to be used pursuant to this motion is, in fact, cash collateral, they file this motion in an abundance of caution and to allow the continuation of their operations until such time as the Court may determine the nature and extent of Specialty's liens, if any exist, in the Debtors' post-petition revenues. The revenues implicated by this motion would be used in accordance with the budget attached hereto as Exhibit "A" (the "Budget") to pay the Debtors' ordinary and necessary operating expenses. Any

revenues received by the Debtors in excess of that described in the Budget will be held by the Debtors until such time as Specialty agrees to, or this Court authorizes, its use. In support of this motion, the Debtors state as follows:

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

1. On May 27, 2010, Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona.

2. Debtors are authorized to operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334.

4. The subject matter of this motion is a core proceeding under 28 U.S.C. §157(b)(2)(A), (M).

5. SDP owns an 18-hole golf course and related properties, including luxury villas, a practice park, range house, tennis courts and related facilities in Sedona, Arizona, known generally as Seven Canyons (the "Property").

6. The Club operates the golf course and related facilities for SDP.

7. SDP is the manager and sole member of the Club.

8. Nearly all of the Debtors' revenue is derived from the golf course and related facilities owned by SDP and operated by the Club.

9. In connection with the acquisition, development, and operation of the Property, SDP entered into a series of loan transactions with Specialty (the "Loans").

10. At present, upon information and belief, Specialty claims that there exists a principal balance due and owing under the Loans in excess of $54,384,000.

11. Upon information and belief, Specialty alleges that, among other things, one or more of the parcels comprising the Property serve as collateral for the Loans.

12. As represented in the Budget, the Debtors' revenues derive from the following sources (collectively, these revenues shall hereinafter be referred to as the "Income"):

    a. Dues from members of the Seven Canyons golf club;

    b. Dues from owners of fractional interests in the luxury villas;

    c. Greens fees paid by members and their guests for the use of the golf course;

    d.  Greens fees paid by walk-up golfers for the use of the golf course;

    e.  The sale of food and beverages;

    f.  The sale of golf-related merchandise at the golf course;

    g.  Certain other miscellaneous revenue such as golf lessons, cart fees, etc.; and

    h.  Administrative fees received from the villas' homeowners' association.

  13.  The Budget shows the amount of Income that is expected to be generated in the next 90 days, and the manner in which the Income will be used to pay the Debtors' ordinary and necessary expenses (the "Budget").

  14.  The Budget also reflects certain "Opening cash" on hand held by the Debtor. This "Opening cash" consists primarily of funds advanced by Seven Canyons Recap, LLC ("Recap"), a pre-petition secured creditor of SDP, pursuant to a revolving line of credit secured by portions of SDP's Property.

  15.  With one exception, the expenses reflected in the Budget reflect the ordinary and necessary operating expenses of the Property, including, among other things, the payment of (a) salaries to the Debtors' employees who are absolutely necessary to maintain the golf course and to provide the services necessary to generate the Income; (b) utilities, including electricity and water expenses essential to the Property's continued operations and maintenance of the golf course; (c) leases for equipment used on the golf course, including golf carts; (d) insurance; and (e) management fees to Scottsdale Golf Group, the company that manages the golf course for the Debtors.

  16.  The Budget also reflects a one-time line item, in the amount of $24,000, for the repair of a well pump necessary to keep the golf course watered and green. It is absolutely imperative that the well pump be repaired as soon as possible, because despite the Debtors' best efforts to maintain the course while the pump was down, the golf course is already demonstrating the ill-effects of a lack of sufficient water.

  17.  Ultimately, the Income does not constitute Specialty's "cash collateral," as that term is defined in 11 U.S.C. § 363(a). *See, e.g.*, *See In re Everett Home Town Limited Partnership*, 146 B.R. 453, 456 (Bankr. D. Ariz. 1992) (holding that post-petition greens fees, restaurant and bar

Case 2:10-bk-16711-RTBP Doc 25 Filed 06/03/10 Entered 06/03/10 11:31:03 Desc
Main Document Page 3 of 9
2686999.2

revenues, cart fees, and revenues from the sale of goods and services by the golf course pro shop were not cash collateral); *In re McCann*, 140 B.R. 926 (Bankr. D. Mass 1992) (same); *In re GGVXX, Ltd.*, 130 B.R. 322 (Bankr. D. Colo. 1991) (applying Arizona law and holding that "revenues derived from greens fees and similar use fees are not rents; they are essentially personal property and do not constitute cash collateral."). *Cf. In re Zeeway Corp.*, 71 B.R. 210, 211 (B.A.P. 9th Cir. 1987) (holding that income produced through the operations and services undertaken by the Debtor post-petition are not "proceeds" of pre-petition collateral).

18. Consequently, it is not necessary to obtain either Specialty's consent or the Court's authority to use the Income to pay the Debtor's ordinary and necessary operating expenses.

19. Nevertheless, out of an abundance of caution, and to avoid a potentially time consuming challenge by Specialty regarding the nature of the Income and Specialty's alleged security interest in the Income, the Debtors seek Court authority to use the Income to pay the Debtor's ordinary and necessary operating expenses for the next 90 days pursuant to the Budget.

## II. EVEN IF THE COURT ASSUMES, FOR THE PURPOSE OF THIS MOTION, THAT THE INCOME IS CASH COLLATERAL, SPECIALTY'S INTERESTS THEREIN ARE ADEQUATELY PROTECTED, AND, AS SUCH, THE COURT SHOULD AUTHORIZE THE DEBTORS' CONTINUED USE THEREOF

In order to maintain its operations, including watering the golf course, providing necessary services to its members and guests, insuring the property and paying employees, it is necessary for the Debtors to be able to use the Income to pay ordinary and necessary operating expenses. The use of the Income pursuant to the Budget will protect and preserve the Debtor's estate and Specialty's (and other creditors') collateral. Therefore, notwithstanding the Debtors' position that the Income does not constitute "cash collateral," the Debtors should be authorized to use the Income pursuant to the Budget even if the Income does constitute Specialty's cash collateral.

Pursuant to 11 U.S.C. §363(c)(2), the Debtor may use cash collateral if the entity holding an interest in such cash collateral consents or, if after notice and a hearing, the Court authorizes its use. Where an entity objects to the use of cash collateral, the Court may still permit its use by the debtor upon a showing that the rights of the objecting party are adequately protected. 11 U.S.C. §363(e); See Collier on Bankruptcy §363.04, 15th Ed., 1989.

Section 361 of the Bankruptcy Code specifies three means of proving adequate protection,

however, as indicated in the legislative history to that section, such means are "neither exclusive nor exhaustive." Generally, the "interest in property sought to be protected under Code § 361 is the value of the secured creditor's collateral during the interim period between the filing of the petition and confirmation of a plan of reorganization, or dismissal of the case." *In re 499 W. Warren Street Associates, Ltd. Partnership*, 142 B.R. 53, 57 (Bankr. N.D.N.Y. 1992) (citation omitted). The nature of the adequate protection to which a secured creditor may be entitled should be determined through case-by-case analysis, and with the goal of allowing the debtor maximum flexibility in affording such adequate protection. *In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985).

Courts have been understandably reluctant to forbid the reasonable and well-controlled use of a primary creditor's cash collateral in realization of the death knell that such a restriction would represent for the Debtor's prospects of reorganization. *See In re Franklin Pembroke Venture II*, 105 B.R. 276, 277-78 (Bankr. E.D.Pa. 1989); *In re Stein*, 19 B.R. 458, 459 (Bankr. Pa., 1982)("[T]he purpose of Chapter 11 is to rehabilitate debtors and generally, access to cash collateral is necessary in order to operate a business.").

Courts have consistently found that a debtor's use of cash collateral to pay the reasonable and necessary operating expenses of the debtor's property, by itself, satisfies the "adequate protection" requirement of § 363(c)(2). *See e.g. In re R&G Properties, Inc.*, 2009 WL 2043875 at *6 (Bankr. D. Vermont 2009) (and cases cited therein); *In re Princeton Square Associates, L.P.*, 201 B.R. 90, 96 (Bank S.D.N.Y. 1996) ("The use of rents by a debtor in possession to maintain the property to the same extent that a receiver of rents would use the rents does no economic harm to the lender . . . . In the context of rents, this court concludes that no monetary protection is required to be provided by the debtor in possession to the secured creditor to the extent that the rents are applied for the maintenance of the property in the manner a receiver would apply the rents."); *499 W. Warren Street Associates,* 142 B.R. at 56-57 ("Under appropriate circumstances, use of a portion of the rental income to pay the reasonable and necessary operating expenses of the property satisfies [the adequate protection requirement].").

Here, even in the unlikely event that the Income is found to be cash collateral, Specialty is

protected against any risk by the use of the Income to pay the Debtors' ordinary and necessary expenses. The use of the Income to operate and maintain the Property will protect Specialty's interest in the Property and will protect against a decrease in the value of the Property. Therefore, even though not required for the use of the Income, Specialty is adequately protected, and the Debtors should be permitted to use the Income to pay the expenses associated with maintaining, preserving and improving the Property.

WHEREFORE, the Debtors respectfully request that the Court enter its order authorizing the Debtors to use the Income to pay their ordinary and necessary operating expenses in accordance with the Budget, with a ten percent (10%) variance for the entire Budget, for the next ninety (90) days, with the right to seek additional use of the Income after the expiration of such period and/or to seek a specific determination that the Income is not Specialty's cash collateral.

DATED: June 3, 2010.

POLSINELLI SHUGHART PC

By: _____
John J. Hebert
Philip R. Rudd
Wesley D. Ray
Security Title Plaza
3636 N. Central Ave., Suite 1200
Phoenix, AZ 85012
*Attorneys for the Debtor*

**COPY** of the foregoing mailed (or served via electronic notification if indicated by an "*") on June 3, 2010, to:

| | |
|---|---|
| U.S. TRUSTEE'S OFFICE<br>230 N. 1st Avenue, Suite 204<br>Phoenix, AZ 85003 | Joseph E. Cotterman * jec@gknet.com<br>Nathan W. Blackburn *nate.blackburn@gknet.com<br>GALLAGHER & KENNEDY, P.A.<br>2527 E. Camelback Road<br>Phoenix, AZ 85016-9225<br>*Attorneys for Specialty Trust, Inc.* |

List of 20 largest unsecured creditors attached hereto as Exhibit "B"

By: ___*/s/ Cathie Bernales*___

# EXHIBIT A

**Sedona Development Partners**
**Forecast Cash Flows for Court Reporting**
**June to September, 2010**

| | | June | July | August | Total |
|---|---|---|---|---|---|
| Receipts: | 11 | | | | |
| Dues - Full golf | 12 | 53,300 | 53,300 | 53,300 | 159,900 |
| Dues - Fractionals | 13 | 36,800 | 36,800 | 36,800 | 110,400 |
| Green fees - member/guests | 14 | 74,689 | 41,605 | 25,295 | 141,588 |
| Green fees - walk on | 15 | 60,300 | 31,323 | 16,958 | 108,580 |
| Restaurant | 16 | 82,767 | 44,461 | 37,331 | 164,560 |
| Merchandise | 17 | 10,400 | 6,300 | 5,900 | 22,600 |
| Other revenues | 18 | 5,000 | 10,029 | 8,169 | 23,198 |
| Administration fee - Villas | 19 | 33,784 | 33,784 | 33,784 | 101,352 |
| | 20 | | | | |
| Total receipts | 21 | 357,040 | 257,601 | 217,536 | 832,178 |
| Disbursements: | 22 | | | | |
| Payroll, taxes & WC | 23 | 117,288 | 169,394 | 112,332 | 399,014 |
| Benefits | 24 | 11,292 | 11,292 | 11,292 | 33,875 |
| Utilities | 25 | 13,778 | 23,778 | 23,429 | 60,985 |
| Proshop supplies | 26 | 0 | 1,550 | 550 | 2,100 |
| Course maintenance | 27 | 0 | 17,696 | 17,696 | 35,392 |
| Golf cart leases | 28 | 6,653 | 6,653 | 6,653 | 19,958 |
| Lease payments | 29 | 35,464 | 35,464 | 35,464 | 106,393 |
| Computer support | 30 | 0 | 5,200 | 5,200 | 10,400 |
| Management fees | 31 | 1,000 | 24,000 | 24,000 | 49,000 |
| Insurance | 32 | 3,000 | 3,000 | 3,000 | 9,000 |
| Property taxes | 33 | 0 | 0 | 0 | 0 |
| Members promo | 34 | 0 | 2,200 | 2,200 | 4,400 |
| Member promotions | 35 | 0 | 0 | 0 | 0 |
| Trustees fees | 36 | 0 | 1,950 | 0 | 1,950 |
| Other costs | 37 | 0 | 17,308 | 18,143 | 35,452 |
| Allocation in - Roads | 38 | 12,596 | 12,596 | 12,596 | 37,788 |
| Allocation in - Villas | 39 | 10,601 | 10,601 | 10,601 | 31,803 |
| | 40 | | | | |
| | 41 | 211,671 | 342,682 | 283,156 | 837,510 |
| Food, bev & merchandise | 42 | 21,711 | 18,411 | 18,363 | 58,485 |
| | 43 | | | | |
| Total costs | 44 | 233,382 | 361,093 | 301,519 | 895,995 |
| Capital expenditures | 45 | 0 | 0 | 0 | 0 |
| Well pump #3 | 46 | 24,000 | 0 | 0 | 24,000 |
| Well pump #4 | 47 | 0 | 0 | 0 | 0 |
| Other | 48 | 0 | 0 | 0 | 0 |
| | 49 | | | | |
| Total disbursements | 50 | 257,382 | 361,093 | 301,519 | 919,995 |
| | 51 | | | | |
| Net cash flow | 52 | 99,658 | -103,492 | -83,983 | -87,817 |
| Opening cash | 53 | 97,500 | 197,158 | 93,667 | 97,500 |
| | 54 | | | | |
| Closing cash | 55 | 197,158 | 93,667 | 9,683 | 9,683 |
| | 56 | ======= | ======= | ======= | ======= |

**In re Sedona Development Partners, LLC; and The Club at Seven Canyons**
**Chapter 11 – Case No. 2:10-bk-16711 and Case No. 2:10-bk-16714-RTB**
**Pending Joint Administration under Case No. 2:10-bk-16711-RTB**
**Exhibit B**

| | | |
|---|---|---|
| ADP TOTAL SOURCE<br>10200 SUNSET DRIVE<br>MIAMI, FL 33173-3033 | ARIZONA DEPARTMENT OF REVENUE<br>P O BOX 29079<br>PHOENIX, AZ 85038-9079 | ARIZONA SPORTS TURF<br>6125 E. JOAN DE ARC<br>SCOTTSDALE, AZ 85254 |
| CALLAWAY GOLF<br>P O BOX 9002<br>CARLSBAD, CA 92018-9002 | CARNOUSTIE<br>16901 MILLIKAN AVENUE<br>IRVINE, CA 92606 | CARTER OIL CO, INC.<br>P O BOX 2506<br>Flagstaff, AZ 86003 |
| CUSTOM BRANDED SPORTSWEAR<br>7007 COLLEGE BLVD.<br>SUITE 700<br>OVERLAND PARK, KS 66211 | DR. ROBERT KOEPKE<br>1150 DRY CREEK ROAD<br>SEDONA, AZ 86336 | IMPERIAL HEADWEAR, INC.<br>1086 PAYSPHERE CIRCLE<br>CHICAGO, IL 60674 |
| INFINCOM, INC.<br>P O BOX 63303<br>PHOENIX, AZ 85082 | JOHN DEERE LANDSCAPES<br>24110 NETWORK PLACE<br>CHICAGO, IL 60673-1241 | JONAS SOFWARE USA, INC.<br>P O BOX 3476<br>PHILADELPHIA, PA 19178-3476 |
| K. P. VENTURES DRILLING & PUMP<br>P O BOX 2411<br>COTTONWOOD, AZ 86326 | MERIT TECHNOLOGY PARTNERS<br>2940 SOUTHWEST DRIVE, #4<br>SEDONA, AZ 86336 | PADZUR PUBLISHING<br>2171 CAMPUS DRIVE, #330<br>IRVINE, CA 92612 |
| PING INC.<br>P O BOX 52450<br>PHOENIX, AZ 85072-2450 | SEVEN CANYONS ROAD ASSOC.<br>SEVEN CANYONS VILLA ASSOC.<br>755 GOLF CLUB WAY<br>SEDONA, AZ 86336 | STERLING FOOD SERVICES<br>920 GRAND AVENUE<br>PHOENIX, AZ 85007 |
| T.L. PLUMBING, INC.<br>2155 SHELBY DRIVE<br>SUITE E<br>SEDONA, AZ 86336 | TRI-RENTAL PARTY SPECIALISTS<br>3103 E. BROADWAY RD.<br>SUITE 400<br>PHOENIX, AZ 85040 | BALLARD SPAHR ANDREWS & INGERSOLL<br>1 EAST WASHINGTON ST<br>SUITE 2300<br>PHOENIX, AZ 85004-2555 |
| BURCH AND CRACCHIOLO P.A.<br>P O BOX 16882<br>PHOENIX, AZ 85011 | CHALPIN & TOM, LTD.<br>4080 N. 40TH STREET<br>SUITE 100<br>PHOENIX, AZ 85018 | CITIES WEST PUBLISHING INC.<br>15169 N. SCOTTSDALE ROAD<br>SUITE C-310<br>SCOTTSDALE, AZ 85254 |
| CRAMER-KRASSELT<br>1850 N. CENTRAL AVENUE<br>SUITE 1800<br>PHOENIX, AZ 85004 | DAVID JOHNSON CREATIVE SVC. INC.<br>45 CAMMINO ALTO, SUITE 202<br>MILL VALLEY, CA 94941 | DUANE MILLER<br>15 CULTURAL PARK PLACE<br>SEDONA, AZ 86336 |

| | | |
|---|---|---|
| FENNEMORE CRAIG<br>3003 N. CENTRAL AVENUE<br>SUITE 2600<br>PHOENIX, AZ 85012-2913 | GEORGIA FRONTIERE<br>C/O TONY S. CULLUM, PC<br>14 EAST DALE<br>FLAGSTAFF, AZ 86001 | GOLDSTEIN GOLUB KESSLER LLP<br>RSM MCGLADREY INC.<br>1185 AVENUE OF THE AMERICAS<br>NEW YORK, NY 10036 |
| HACK HOLEMAN<br>P O BOX 3935<br>SEDONA, AZ 86340 | LARSON ALLEN<br>1201 S. ALMA SCHOOL ROAD<br>SUITE 14000<br>MESA, AZ 85210 | PETERSON ARCHITECTURE<br>9420 E DOUBLETREE RANCH RD.<br>SUITE C102<br>SCOTTSDALE, AZ 85258 |
| SCHALLER CONSTRUCTION CO., INC.<br>290 GENTRY WAY, #1<br>RENO, NV 89502 | SERVING THE NATION<br>7130 E. BELMONT AVENUE<br>PARADISE VALLEY, AZ 85253 | SUNDT CONSTRUCTION<br>P O BOX 25346<br>TEMPE, AZ 85285 |
| THE RACHEL P. LUNT FAMILY TRUST<br>C/O ANNA YOUNG PLLC<br>114 S. PLEASANT STREET<br>PRESCOTT, AZ 86303 | TOM WEISKOPF<br>7580 E. GRAY ROAD<br>SUITE 204<br>SCOTTSDALE, AZ 85260 | OFFICE OF UNITED STATES TRUSTEE<br>230 N. First Ave., Suite 204<br>Phoenix, AZ 85003-1706 |