**SO ORDERED.**

Dated: June 21, 2010

_____
**REDFIELD T. BAUM, SR**
**U.S. Bankruptcy Judge**

# IN THE UNITED STATES BANKRUPTCY COURT

## THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SEDONA DEVELOPMENT PARTNERS, LLC; and THE CLUB AT SEVEN CANYONS, LLC<br><br>Debtors. | Chapter 11 Proceedings<br><br>Case No. 2:10-bk-16711-RTBP<br>Case No. 2:10-bk-16714-RTBP<br><br>Jointly Administered Under<br>Case No. 2:10-bk-16711-RTBP<br><br>**STIPULATED INTERIM ORDER FOR DEBTOR'S USE OF CASH** |

Upon consideration of Sedona Development Partners, LLC's ("SDP") and The Club at Seven Canyons, LLC's (the "Club") (collectively the "Debtors") "Motion for Interim Authorization to Use Cash Claimed as Collateral" ("Motion to Use Cash") and the agreement and stipulation between the Debtors and Specialty Financial and Specialty Trust, Inc. (collectively, "Specialty"), as evidenced by their respective counsel's signatures below, and good cause appearing therefore,

THE COURT HEREBY FINDS as follows:

1. On May 27, 2010, Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona.

2. Debtors are authorized to operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334.

1

2692084.1

4. The subject matter of this motion is a core proceeding under 28 U.S.C. §157(b)(2)(A), (M).

5. SDP owns an 18-hole golf course and related amenities, including luxury villas, a practice park, range house, tennis courts and related facilities in Sedona, Arizona, known generally as Seven Canyons (the "Property").

6. The Club operates the golf course and related facilities for SDP.

7. SDP is the manager and sole member of the Club.

8. Nearly all of the Debtors' revenue is derived from the golf course and related facilities owned by SDP and operated by the Club.

9. In connection with the acquisition, development, and operation of the Property, SDP entered into a series of loan transactions with Specialty (the "Loans").

10. At present, Specialty claims that there exists a principal balance due and owing under the Loans in excess of $54,384,000.

11. Specialty alleges that, among other things, one or more of the parcels comprising the Property serve as collateral for the Loans.

12. As represented in the budget attached hereto as Exhibit "A" and incorporated herein by this reference (the "Budget"), the Debtors' revenues derive from the following sources (collectively, these revenues shall hereinafter be referred to as the "Income"):

    a. Dues from members of the Seven Canyons golf club;

    b. Dues from owners of fractional interests in the luxury villas;

    c. Greens fees paid by members and their guests for the use of the golf course;

    d. Greens fees paid by walk-up golfers for the use of the golf course;

    e. The sale of food and beverages;

    f. The sale of golf-related merchandise at the golf course;

    g. Certain other miscellaneous revenue such as golf lessons, cart fees, etc.; and

    h. Administrative fees received from the villas' homeowners' association.

13. The Budget shows the amount of Income that is expected to be generated in the next

2

2692084.1

90 days, and the manner in which the Income will be used to pay the Debtors' ordinary and necessary expenses.

14. With one exception, the expenses reflected in the Budget reflect the ordinary and necessary operating expenses of the Property, including, among other things, the payment of (a) salaries to the Debtors' employees who are absolutely necessary to maintain the golf course and to provide the services necessary to generate the Income; (b) utilities, including electricity and water expenses essential to the Property's continued operations and maintenance of the golf course; (c) leases for equipment used on the golf course, including golf carts; (d) insurance; and (e) management fees to Scottsdale Golf Group, the company that manages the golf course for the Debtors.

15. The Budget also reflects a one-time line item, in the amount of $24,000, for the repair of well pump #3 at the Property necessary to keep the golf course watered and green ("Well Pump #3 Expenses").

16. Furthermore, the Budget does not reflect certain other costs associated with the repair of well pump #4 and certain other aspects of the irrigation system ("Well Pump #4 and Irrigation Expenses") in an amount that is currently unknown.

17. Specialty asserts that portions of the Income constitute its "cash collateral" as that term is used and defined in the United States Bankruptcy Code.

18. The Debtors dispute that any of the Income constitutes "cash collateral."

19. Nevertheless, to avoid a potentially time consuming debate and litigation by and between the Debtors and Specialty regarding the nature of the Income and Specialty's alleged security interest in the Income, the Debtors and Specialty have agreed that the Debtor may use the Income to pay (a) the Debtor's ordinary and necessary operating expenses pursuant to the Budget, plus a 10% variance on the entire budget, through and including July 7, 2010, (b) the Well Pump #3 Expenses, and (c) the Well Pump #4 and Irrigation Expenses.

IT IS HEREBY ORDERED as follows:

A. Subject to the other provisions of this Order, the Debtors may use the Income for (a) the items identified in the Budget, up to the corresponding amounts (subject to a maximum variance of 10%) for each category identified in the Budget, (b) the Well Pump #3 Expenses, and (c) the Well Pump #4 and Irrigation Expenses.

2692084.1

B. All Income after payment of such expenses shall be held by the Club in the Club's post-petition debtor-in-possession operating accounts, and will not be used without further authority of the Court or Specialty's prior written agreement.

C. Debtors shall provide to Specialty the invoices or other appropriate documentation reflecting the costs associated with the Well Pump #3 Expenses and the Well Pump #4 and Irrigation Expenses.

D. This Order shall expire at 5 p.m., Arizona time, on July 7, 2010 unless otherwise extended by further Order of the Court or pursuant to an agreement by the parties.

E. Nothing contained in this Order shall be deemed or construed to waive, reduce or otherwise diminish the rights of either the Debtors or Specialty to, among other things, (a) seek additional or further relief from the Court with respect to the use of the Income, or to restrict such use; (b) seek a determination from the Court regarding the nature and/or extent of Specialty's alleged lien in the Income or any portion thereof; or (c) seek a determination whether the Income constitutes "cash collateral" as that term is used and defined in the Bankruptcy Code.

F. This Order shall be binding on Specialty and the Debtors, and any and all assigns and/or successors-in-interest to any of these persons or entities, including but not limited to, any trustee in a Chapter 11 or 7 proceeding if the case is converted.

SO ORDERED: _____.

Hon. Redfield T. Baum
United States Bankruptcy Judge

2692084.1

Stipulated and Agreed to this 15th day of June, 2010:

Counsel for the Debtors:

By:_____
John J. Hebert
Philip R. Rudd
Wesley D. Ray
POLSINELLI SHUGHART, PC
Security Title Plaza
3636 N. Central Ave., Suite 1200
Phoenix, AZ 85012

Counsel for Specialty

By:_____
Joseph E. Cotterman
Nathan W. Blackburn
GALLAGHER & KENNEDY, P.A.
2527 E. Camelback Road
Phoenix, AZ 85016-9225

2692084.1

| | |
|---|---|
| 1 | Stipulated and Agreed to this ____ day of June, 2010: |
| 2 | |
| 3 | Counsel for the Debtors: |
| 4 | |
| 5 | By:_____<br>John J. Hebert |
| 6 | Philip R. Rudd<br>Wesley D. Ray |
| 7 | POLSINELLI SHUGHART, PC<br>Security Title Plaza |
| 8 | 3636 N. Central Ave., Suite 1200<br>Phoenix, AZ 85012 |
| 9 | |
| 10 | Counsel for Specialty |
| 11 | |
| 12 | By: */s/ Joseph E. Cotterman*<br>Joseph E. Cotterman |
| 13 | Nathan W. Blackburn<br>GALLAGHER & KENNEDY, P.A. |
| 14 | 2527 E. Camelback Road<br>Phoenix, AZ 85016-9225 |

2692084.1

5

# EXHIBIT A

| Sedona Development Partners | | | | | |
|---|---|---|---|---|---|
| Forecast Cash Flows for Court Reporting | | | | | |
| June to September, 2010 | | | | | |
| | | June | July | August | Total |
| Receipts: | 11 | | | | |
| Dues - Full golf | 12 | 53,300 | 53,300 | 53,300 | 159,900 |
| Dues - Fractionals | 13 | 36,800 | 36,800 | 36,800 | 110,400 |
| Green fees - member/guests | 14 | 74,689 | 41,605 | 25,295 | 141,588 |
| Green fees - walk on | 15 | 60,300 | 31,323 | 16,958 | 108,580 |
| Restaurant | 16 | 82,767 | 44,461 | 37,331 | 164,560 |
| Merchandise | 17 | 10,400 | 6,300 | 5,900 | 22,600 |
| Other revenues | 18 | 5,000 | 10,029 | 8,169 | 23,198 |
| Administration fee - Villas | 19 | 33,784 | 33,784 | 33,784 | 101,352 |
| | 20 | ---------- | ---------- | ---------- | ---------- |
| Total receipts | 21 | 357,040 | 257,601 | 217,536 | 832,178 |
| Disbursements: | 22 | | | | |
| Payroll, taxes & WC | 23 | 117,288 | 169,394 | 112,332 | 399,014 |
| Benefits | 24 | 11,292 | 11,292 | 11,292 | 33,875 |
| Utilities | 25 | 13,778 | 23,778 | 23,429 | 60,985 |
| Proshop supplies | 26 | 0 | 1,550 | 550 | 2,100 |
| Course maintenance | 27 | 0 | 17,696 | 17,696 | 35,392 |
| Golf cart leases | 28 | 6,653 | 6,653 | 6,653 | 19,958 |
| Lease payments | 29 | 35,464 | 35,464 | 35,464 | 106,393 |
| Computer support | 30 | 0 | 5,200 | 5,200 | 10,400 |
| Management fees | 31 | 1,000 | 24,000 | 24,000 | 49,000 |
| Insurance | 32 | 3,000 | 3,000 | 3,000 | 9,000 |
| Property taxes | 33 | 0 | 0 | 0 | 0 |
| Members promo | 34 | 0 | 2,200 | 2,200 | 4,400 |
| Member promotions | 35 | 0 | 0 | 0 | 0 |
| Trustees fees | 36 | 0 | 1,950 | 0 | 1,950 |
| Other costs | 37 | 0 | 17,308 | 18,143 | 35,452 |
| Allocation in - Roads | 38 | 12,596 | 12,596 | 12,596 | 37,788 |
| Allocation in - Villas | 39 | 10,601 | 10,601 | 10,601 | 31,803 |
| | 40 | ---------- | ---------- | ---------- | ---------- |
| | 41 | 211,671 | 342,682 | 283,156 | 837,510 |
| Food, bev & merchandise | 42 | 21,711 | 18,411 | 18,363 | 58,485 |
| | 43 | ---------- | ---------- | ---------- | ---------- |
| Total costs | 44 | 233,382 | 361,093 | 301,519 | 895,995 |
| Capital expenditures | 45 | 0 | 0 | 0 | 0 |
| Well pump #3 | 46 | 24,000 | 0 | 0 | 24,000 |
| Well pump #4 | 47 | 0 | 0 | 0 | 0 |
| Other | 48 | 0 | 0 | 0 | 0 |
| | 49 | ---------- | ---------- | ---------- | ---------- |
| Total disbursements | 50 | 257,382 | 361,093 | 301,519 | 919,995 |
| | 51 | ---------- | ---------- | ---------- | ---------- |
| Net cash flow | 52 | 99,658 | -103,492 | -83,983 | -87,817 |
| Opening cash | 53 | 97,500 | 197,158 | 93,667 | 97,500 |
| | 54 | ---------- | ---------- | ---------- | ---------- |
| Closing cash | 55 | 197,158 | 93,667 | 9,683 | 9,683 |
| | 56 | ======= | ======= | ======= | ======= |